**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 14 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

　　　　Plaintiff - Appellee,

　　v.

RONALD SCOTT OLIVER, also
known as Mark Lloyd,

　　　　Defendant - Appellant.

No. 00-4191

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D. Ct. No. 00-CR-87-ST)**

---

Submitted on the briefs:

Benjamin A. Hamilton, Salt Lake City, Utah, for Appellant.

Paul M. Warner, United States Attorney, and Diana Hagen, Assistant United
States Attorney, District of Utah, Salt Lake City, Utah, for Appellee.

---

Before **TACHA**, Chief Judge, **BALDOCK**, and **HENRY**, Circuit Judges.

---

**TACHA**, Chief Circuit Judge.

---

After examining the briefs and the appellate record, this three-judge panel

has determined unanimously that oral argument would not be of material

assistance in the determination of this appeal.    See Fed. R. App. P. 34(a)(2); 10th

Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Petitioner-appellant Ronald Scott Oliver appeals his convictions for two

counts of bank robbery, 18 U.S.C. § 2113(a), (d), and one count of use of a

firearm in connection with a crime of violence, id. § 924(c)(1)(A)(ii).  Oliver

appeals these convictions on the grounds that: (1) the United States Attorney

improperly commented on Oliver's invocation of his rights under Miranda v.

Arizona, 384 U.S. 436, 467-74 (1966); (2) the trial judge improperly limited

Oliver's Sixth Amendment right to cross-examination; (3) the district court erred

by conditionally admitting rebuttal evidence of Oliver's conviction for driving

under the influence (DUI) during the prosecution's case-in-chief; (4) the district

court erroneously refused to clarify the record on appeal; (5) there was

insufficient evidence to support the conviction; and (6) these errors, taken

cumulatively, warrant a new trial.  We exercise jurisdiction pursuant to 28 U.S.C.

§ 1291 and affirm.

I.  Facts

Between June 18 and July 17, 1999, the First Security Bank was robbed

twice (the first and third robberies) and the Zions Bank was robbed once (the

second robbery).  Both banks are located in grocery stores.  After an extensive

investigation, police arrested Jerry Petty for the third robbery.  In exchange for a

-2-

possible recommendation for a downward departure in sentencing, Petty agreed to give information and testimony regarding the first two robberies.

Petty claimed to have met a man named Scott earlier in the summer of 1999. According to Petty, Scott confided that he had previously robbed the First Security Bank. Petty also said that the pair had robbed the Zions Bank together.

An investigation eventually led the police to suspect that Ronald Scott Oliver was "Scott." Police arrested Oliver after Melinda Jillson, a teller at First Security Bank, identified him as the first robber. Oliver was tried and convicted for the first robbery of First Security Bank and for the robbery of Zions Bank. Oliver appealed, and we now affirm.

## II. Discussion

We address each of Oliver's six grounds for appeal in turn.

A.      Prosecutorial Comment on Oliver's Invocation of his Miranda Rights

Oliver first argues that during the course of the trial the prosecutor improperly commented upon Oliver's invocation of his Miranda rights. This allegation arises out of the following exchange between the United States Attorney and Agent George Dougherty:

Q. (U.S. Attorney) And did you prior to instigating that interview give him what are known as Miranda warnings?

A. Yes, we did.

Q. Did he subsequently exercise his rights under the Miranda

-3-

warning and not discuss anything with you concerning —

Oliver immediately objected and moved for a mistrial. During a recess, the court found that the question was not improper comment upon Oliver's Miranda rights and denied the motion. The court offered to issue a limiting instruction, which Oliver declined.

We review de novo whether a defendant's Fourteenth Amendment rights have been violated. United States v. Hampshire, 95 F.3d 999, 1004-05 (10th Cir. 1996).

Use of a defendant's invocation of Miranda rights against the defendant at trial violates the Due Process Clause of the Fourteenth Amendment. Doyle v. Ohio, 426 U.S. 610, 619 (1976) (establishing that prosecutorial comment upon a defendant's invocation of Miranda for impeachment purposes is impermissible). A prosecutor's statement or question relating to the invocation of Miranda rights, however, does not always rise to the level of a constitutional Doyle violation. Greer v. Miller, 483 U.S. 756, 764 (1987). Analysis under Greer proceeds in two steps. First, we ask whether the prosecutor's question constituted a "use" of the defendant's Miranda rights. Greer, 483 U.S. at 763. If not, our second step is to ask whether the question so unfairly prejudiced the defendant as to rise to the level of a due process violation. Id. at 765. An affirmative answer to either of these questions warrants reversal, provided that the error is not harmless.

-4-

Starting with the first step of the Greer test, we find that the prosecutor's question did not constitute an improper use of Oliver's Miranda rights. Here, as in Greer, "[t]he fact of [the defendant's] postarrest silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference, and thus no Doyle violation occurred." 483 U.S. at 764-65. In fact, the question in Oliver's case was even less damaging to the defendant than questions found permissible under Doyle in Greer and in this circuit's precedents. See, e.g., United States v. Lane, 883 F2d 1484 (10th Cir. 1989).

In Greer, for example, a prosecutor asked the defendant, "Why didn't you tell this story to anybody when you got arrested?" Id. at 759. The defense attorney immediately objected under Doyle. Id. The trial court sustained the objection and issued a curative instruction. Id. The Supreme Court held that

> [T]he sequence of events at the trial, beginning with the single comment — but including particularly the proper and immediate action by the trial court, and the failure by defense counsel to request more specific instructions — indicates that [the defendant's] postarrest silence was not used against him within the meaning of Doyle."

Id. at 764 n.5. The prosecutor's question in Greer – "Why didn't you tell this story to anybody when you got arrested" – made plain that the defendant actually had exercised his Miranda rights. Here, the prosecutor's wording – "Did [Oliver] subsequently exercise his rights under the Miranda warning . . . ?" – left open the question of whether Oliver had exercised his Miranda rights. The trial judge then

instructed the prosecution to move on until a hearing could be conducted on the motion for mistrial. The judge offered to issue a limiting instruction, which Oliver rejected. After the incident, there was no further comment by the United States Attorney. We are thus confronted with a situation almost identical to Greer.

In Lane, this court declined to find a Doyle violation in similar circumstances, but where the prosecutor's question about the invocation of Miranda elicited an answer. Lane, 883 F.2d at 1493-95. In Lane, the following exchange took place between a prosecutor and an F.B.I. agent:

Q.     Did you advise him of his rights there?
A.     Yes.
Q.     Did he – he understood his rights?
A.     He did.
Q.     Did he say he would answer questions?
A.     He did to a limited extent.
Q.     Did he say he would answer questions but not others?
A.     That's true.

Id. at 1493. The trial judge sustained an objection, instructed the jury not to consider the testimony, and the prosecutor made no further mention of the defendant's postarrest silence. Id. at 1493-94. We found no Doyle violation, and affirmed. Id. at 1494-95. The single unanswered question in Oliver's case carried less potential for damage than the exchange in Lane or the question in Greer, making it clear that the question at issue here does not warrant a reversal

under <u>Doyle</u>.

Applying the second step of the <u>Greer</u> test, we find that the prosecutor's question did not "so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process." <u>Greer</u>, 483 U.S. at 765 (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974)). The United States concedes on appeal that the prosecutor posed an improper question. Prosecutorial misconduct, however, must be "'of sufficient significance to result in the denial of the defendant's right to a fair trial'" before it will rise to the level of a due process violation. <u>Id.</u> The comment must be placed in the context of the whole trial, and not viewed in isolation. <u>Id.</u> at 766 (citing <u>Darden v. Wainwright</u>, 477 U.S. 168, 179 (1986)). The single, unanswered question posed at Oliver's trial fails to meet this standard. Moreover, as evidenced by the sidebar that followed, the United States did not engage in an intentional attempt to infect the trial. Rather, the United States Attorney held a good-faith belief that the question was proper (a belief that the trial court sustained). The prosecutor's knowledge of case law to support her position only lends credence to this belief. We find no grounds for reversal under either step of the <u>Greer</u> test.

B.   Cross-Examination Limitations

Oliver next complains that limitations on his cross-examination of Petty violated his confrontation rights under the Sixth Amendment. At trial, Oliver

attacked Petty's truthfulness on cross-examination by eliciting facts regarding Petty's numerous failures to appear in court. He also attempted to discredit Petty's testimony by examining the details of Petty's plea bargain and his motives for entering into it. The district court allowed exploration of these general areas. The court did not, however, allow Oliver to inquire about the specific nature of charges pending against Petty, the specific amounts of jail time Petty might serve, or the specific nature of the underlying charges in his failures to appear.

We review de novo whether restrictions on cross-examination violated a defendant's Sixth Amendment confrontation rights. United States v. Gault, 141 F.3d 1399, 1403 (10th Cir. 1998).

The right to cross-examine witnesses is an integral part of the broader Sixth Amendment right to confront witnesses directly in a criminal trial. Davis v. Alaska, 415 U.S. 308, 315-16 (1974); Crespin v. New Mexico, 144 F.3d 641, 646 (10th Cir. 1998). While this right is potentially broad enough to require admission of evidence that is otherwise excludable under the Federal Rules of Evidence, see United States v. Abel, 469 U.S. 45, 56 (1984) (requiring the admission of evidence that might otherwise be inadmissible under Rule 608(b)), it is not an absolute right, Gault, 141 F.3d at 1403. The Confrontation Clause guarantees "only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the

defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam). Accordingly, trial court judges may impose reasonable limitations on cross-examination based upon concerns of "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986) (finding a Confrontation Clause violation where the trial court barred all questioning about an event that might have demonstrated a motive to lie). On review, our task is to determine "'whether the jury had sufficient information to make a discriminating appraisal of the witness' motives and bias.'" Gault, 141 F.3d at 1403.

The Confrontation Clause does not require the admission of potentially inflammatory and irrelevant testimony when a defendant has other avenues to attack a witness's credibility. Consistent with this principle, the district court in this case imposed only reasonable limits on cross-examination and afforded Oliver ample opportunity to portray Petty as biased and motivated to lie. The limitations did not significantly impede Oliver's ability to challenge the "believability of [the] witness and the truth of his testimony." Davis, 415 U.S. at 316. Oliver was able to elicit that Petty had an extensive criminal history, a serious drug problem, a history of using fake names and identifications, and a record of failing to appear in court after signing promises to do so. Oliver also showed that Petty was able to receive a downward departure in sentence only after

cooperating with the government. The court allowed Oliver to cross-examine Petty thoroughly regarding the nature of his actual plea agreement with the government and his motives for entering into it, as required by Davis v. Alaska. 415 U.S. at 316-17. Oliver explored Petty's felony convictions. He also introduced witnesses who testified to Petty's history of lying. We find no Confrontation Clause violation.

C.      Conditional Admission of Evidence

The teller at First Security bank, Melinda Jillson, testified that the robber "reeked of alcohol." Oliver attempted to discredit this identification by introducing evidence at trial that he did not drink. In anticipation of this argument, the United States introduced a letter from Oliver that indicated that he had received a DUI conviction. The United States also elicited foundational testimony from the letter's recipient. No testimony as to the letter's contents was entered. The district court admitted the letter into evidence over Oliver's objection on the conditions that Oliver actually introduce testimony that he did not drink and that the United States prove that the DUI was alcohol-related. The first condition was satisfied. The United States eventually discovered, however, that the DUI was methamphetamine-related, rather than alcohol-related. The United States withdrew the letter, which was never published to the jury. Later, during its deliberations, the jury sent a note to the court requesting to see the

letter. The district court replied with a one-word response: "No." Oliver alleges that this sequence of events was improper under the Federal Rules of Evidence.

We review a challenge to the district court's ruling on admission of evidence for an abuse of discretion. United States v. McVeigh, 153 F.3d 1166, 1188 (10th Cir. 1998).

Federal Rule of Evidence 104(b) provides that "[w]hen the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of that condition." The district court here admitted the letter regarding Oliver's DUI on the condition that the government offer proof that it was alcohol-related. When it became clear that the DUI was the result of driving under the influence of methamphetamine, rather than alcohol, the evidence was withdrawn. It was never published to the jury. The district court admitted the evidence conditionally as required by Rule 104(b), and the prosecution withdrew the evidence when it could not satisfy the condition. The court did not abuse its discretion.

Nor is the fact that the jury asked to see a copy of the letter of any concern. The jury could not improperly consider or focus upon a letter that it never saw. Oliver's suggestion that the jury was entitled to a more expansive explanation from the judge than a one-word explanation is puzzling at best. Such an

explanation would only have drawn attention to the withdrawn evidence and might have raised suspicions about its contents. The district court did not err by failing to elaborate on the reason for the letter's withdrawal.

D.      The District Court's Refusal to Supplement the Record

During post-trial motions, Oliver moved to supplement the record with a photograph of a tattoo on his arm. The district court denied the motion because the pictures had not been submitted to the jury at trial. Oliver followed this up with a written motion to supplement the record. The district court found that Oliver had "displayed his arm and the tattoo" to the jury and that the defense "did not submit photographs of the tattoo at trial." The court therefore found "that the record adequately discloses what occurred at trial" and refused to clarify the record further.

We review a refusal to clarify the record for an abuse of discretion. Gillette v. Tansy, 17 F.3d 308, 313 (10th Cir. 1994).

Federal Rule of Appellate Procedure 10(e) allows supplementation of the record only where it is necessary to "truly disclose[] what occurred in the district court." United States v. Kennedy, 225 F.3d 1187, 1191 (10th Cir. 2000), cert. denied, 121 S. Ct. 1406 (2001) (quoting Fed. R. App. P. 10(e)) (alteration in original). The record reveals extensive discussion of Oliver's tattoo, which the jury apparently saw firsthand. Testimony describes Oliver's tattoo in detail. We

thus see no need to include an actual photograph of the tattoo in the record. The district court did not abuse its discretion by refusing to add the photograph.

E.      Sufficiency of the Evidence

Oliver contends that the evidence discredited Jillson's identification of him, that Petty lacked credibility, and that the photograph from the second robbery did not show a tattoo. He argues that there is therefore insufficient evidence to support his conviction.

We review a challenge to the sufficiency of the evidence de novo, viewing all evidence and drawing all reasonable inferences in the light most favorable to the government. United States v. Wilson, 244 F.3d 1208, 1219 (10th Cir.), cert. denied, 121 S. Ct. 2619 (2001). We limit our inquiry to determining whether any rational trier of fact could have found the elements of the crime proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). It is left to the jury to "'weigh conflicting evidence'" and to "'consider the credibility of witnesses.'" United States v. McKissick, 204 F.3d 1282, 1289-90 (10th Cir. 2000) (quoting United States v. Pappert, 112 F.3d 1073, 1077 (10th Cir. 1997)). We will only disregard testimony as incredible if it gives "'facts that [the witness] physically could not have possibly observed or events that could not have occurred under the laws of nature.'" Tapia v. Tansy, 926 F.2d 1554, 1562 (10th Cir.), (quoting United States v. Garner, 581 F.2d 481, 485 (5th Cir. 1978)

(alteration in original).

We find no justification for overturning the jury's verdict. While there was conflicting expert testimony as to the reliability of Jillson's ability to identify the witness, it is "solely within the province of the jury," to weigh this expert testimony. Valdez v. Ward, 219 F.3d 1222, 1238 (10th Cir. 2000), cert. denied, 121 S. Ct. 1618 (2001). Neither the jury's resolution of testimony disputing various aspects of Jillson's identification nor its assessment of Petty's credibility fell outside of the bounds of reason.

We also decline to set aside the jury's interpretation of the photographic evidence admitted at trial to identify Oliver. While some witnesses who examined the video from First Security Bank's surveillance cameras claimed that the robber did not appear to have a tattoo where Oliver's is located, others admitted that there was a glare where his tattoo would have been. Still other witnesses testified that they could discern a dark line where Oliver's tattoo is located. The jury's resolution of this testimony was not irrational and does not justify reversal.

F.    Cumulative Error

We have no reason to apply the cumulative error doctrine, since we find no error on the part of the district court. United States v. Rivera, 900 F.2d 1462, 1465 (10th Cir. 1990).

-14-

## III. Conclusion

Because we find no merit to any of Oliver's claims, we AFFIRM the judgment of the District Court of Utah.