## S03A0034. WATKINS v. THE STATE.
### (581 SE2d 23)

HUNSTEIN, Justice.

Joseph Samuel Watkins was convicted of felony murder in the shooting death of Isaac Dawkins. He appeals from the denial of his motion for new trial.[1] Finding no error, we affirm.

1. Viewing the evidence in the light most favorable to the verdict, the jury was authorized to find that after Brianne Scarbrough ended her relationship with appellant, he began threatening and harassing anyone who subsequently dated her. After Dawkins began seeing Scarbrough in the summer of 1999, numerous incidents occurred during which appellant made threatening comments about Dawkins, attempted to get him to fight and followed Dawkins whenever he saw

---

[1] The crimes occurred on January 11, 2000. Watkins was indicted January 26, 2001 in Floyd County on charges of malice murder, felony murder predicated on aggravated assault, aggravated assault, possession of a firearm during the commission of a crime and stalking (OCGA § 16-5-90). He was acquitted of malice murder and found guilty on the remaining charges on July 2, 2001. He was sentenced the same day to life imprisonment for felony murder, five years consecutive on the possession charge and twelve months on the stalking charge. His motion for new trial, filed July 3, 2001 and amended April 5, 2002, was denied July 25, 2002. A notice of appeal was filed August 21, 2002. The appeal was docketed in this Court on September 10, 2002 and was orally argued on January 29, 2003.

him, even when Dawkins was not with Scarbrough. A friend of appellant told police that it was appellant's "main goal every day" to find Dawkins. Evidence was presented from which the jury could find that as part of this threatening behavior appellant with his friends shot Dawkins' dog between the eyes while it was chained in its pen in the victim's yard. Witness Yvonne Agan testified that in late November or December 1999 Dawkins arrived at her home, terrified, and related that while driving to his own home, appellant had chased and fired a gun at him. Agan hid the victim's white Toyota truck and allowed him to sleep on her couch. Dawkins declined to let Agan report the matter because he believed the incidents would stop since he had stopped dating Scarbrough.

Shortly after 7:00 p.m. on January 11, 2000, Dawkins was driving his truck north on Highway 27 after leaving his class at Floyd College. An occupant in a blue or green passenger car fired a shot through the truck's back window and hit Dawkins in the head. One eyewitness identified appellant as the shooter. The truck veered off the highway, crossed the median, crashed into a side rail and after rolling over came to a stop with its rear end facing north. While modifications to the front of the truck made it identifiable as belonging to Dawkins, only the rear of the vehicle was visible to traffic. An eyewitness to the crash phoned 911 and an emergency vehicle was at the scene within three minutes of the call. Appellant's cell phone records established that he was in the area at the time of the attack and when he arrived at his destination, he was overheard telling his new girlfriend that "his friend had just got killed." It required medical scans at the hospital to reveal the presence of the bullet in Dawkins' head; the victim was pronounced dead the following day.

The jury heard testimony that appellant initially asked friends to give him an alibi for the time of the shooting. Thereafter in his comments to others, appellant gave conflicting stories regarding what direction he was heading at the time of the shooting, with appellant claiming that he saw the victim's truck on the side of the road and thought Dawkins had possibly had a flat tire. Later comments by appellant reflected the fact that emergency vehicles were promptly at the crash scene, although appellant had difficulty explaining how he recognized that the crashed truck was the victim's. Appellant was later overheard in the local Home Depot parking lot bragging about shooting the victim and witnesses testified to comments made by appellant's friends, who claimed to be in the car with appellant, indicating that appellant shot the victim. After the shooting, appellant told a witness who was dating Scarbrough that if the witness did not stop seeing her, "he [the witness] would end up just like Isaac [Dawkins]."

We find this evidence sufficient to enable a rational trier of fact

to find appellant guilty of the crimes of which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends the trial court erred by admitting the hearsay testimony of Yvonne Agan pursuant to the necessity exception. Under that exception, hearsay statements are admissible when the evidence is necessary and there are particular guarantees of trustworthiness. *Chapel v. State*, 270 Ga. 151 (4) (510 SE2d 802) (1998). Furthermore, the statement must be relevant to a material fact and more probative of that material fact than other evidence that may be procured and offered. Id. The trial court's admission of hearsay evidence under the necessity exception is evaluated under an abuse of discretion standard. *Gissendaner v. State*, 272 Ga. 704 (6) (532 SE2d 677) (2000).

The victim's death established the first prong. *Chapel*, supra. As to trustworthiness, the test to determine whether there are sufficient indicia of reliability is whether the declarant's truthfulness is so clear from the surrounding circumstances that cross-examination of the declarant would be of marginal utility. Id. Here, the trial court heard evidence that the victim had a close, trusting and loving relationship with Agan, who loved him like he was her own son and considered him to be a part of her family and that he would come to talk to her and confided in her when he had problems. See *McCoy v. State*, 273 Ga. 568 (4) (544 SE2d 709) (2001) (uncontradicted statements made to one in whom the deceased declarant placed great confidence and turned to for help with problems are admissible under necessity exception). The victim never disavowed his statement, see *Perkins v. State*, 269 Ga. 791 (4) (505 SE2d 16) (1998), and there was nothing to show that the victim had any motive to lie to Agan about appellant's violent behavior. See *Slakman v. State*, 272 Ga. 662 (3) (b) (3) (533 SE2d 383) (2000). Looking to the totality of the circumstances, see *Chapel*, supra, we find no abuse of the trial court's discretion in ruling that there were sufficient indicia of reliability to support the admission of the victim's statement to Agan.

Finally, the victim's statement to Agan was relevant to a material fact regarding appellant's hostility and threatening behavior towards the victim. Contrary to appellant's contention, our review of the transcript reveals that the trial court correctly recognized that this statement constituted the only evidence that showed appellant had previously shot at the victim in his truck. See *Campos v. State*, 273 Ga. 119 (2) (538 SE2d 447) (2000). We find no error in the admission of Agan's testimony.

3. Assuming, arguendo, that appellant properly objected at trial, we find that the trial court did not impermissibly restrict his cross-examination of Agan. At the time of appellant's trial, Agan had

charges pending against her and had not yet been tried and acquitted on those charges.[2] Outside the presence of the jury the district attorney stated in her place that the State had negotiated no deal with Agan in exchange for her testimony. When the defense sought the court's permission to introduce the charges into evidence in order to impeach Agan, the trial court properly refused to permit the evidence on the basis that a witness cannot be impeached by instances of specific misconduct unless that misconduct has resulted in the conviction of a crime involving moral turpitude. See *Williams v. State*, 257 Ga. 761 (4) (363 SE2d 535) (1988). The trial court correctly recognized that the defense was entitled to cross examine Agan about the charges in order to address any bias the witness might have as a result of the pending charges.[3] See *Hines v. State*, 249 Ga. 257, 259 (2) (290 SE2d 911) (1982). However, while allowing defense counsel broad scope in questioning Agan, the trial court ruled that counsel could not ask Agan about the specific nature of the charges pending against her.[4]

The trial court did not abuse its discretion by so ruling. See *Brown v. State*, 276 Ga. 192 (3) (576 SE2d 870) (2003). The transcript establishes that the trial court did not cut off all inquiry into the possible bias of Agan due to pending criminal charges. Compare *Beam v. State*, 265 Ga. 853 (4) (463 SE2d 347) (1995); *Byrd v. State*, 262 Ga. 426 (2) (420 SE2d 748) (1992). And given the district attorney's statement in her place that no deals had been made with Agan, this was not a situation where the nature of the pending charges was pertinent to an examination of a witness regarding her understanding of the favorable terms contained in the deal, in comparison to the potential sentence available for the pending charges. Compare *State v. Vogleson*, 275 Ga. 637 (1) (571 SE2d 752) (2002); *Owens v. State*, 251 Ga. 313 (1) (305 SE2d 102) (1983).

With the exception of inquiry into the specific nature of the pending charges, the trial court imposed no other limit on appellant's

---

[2] Agan's acquittal on the charges was established at the hearing on appellant's motion for new trial.

[3] The trial court ruled:
Now you can certainly go into this. You can say: how long ago were you charged? How long has your case been pending? Have you been promised anything? The State — it hasn't been disposed of and you are still waiting and hoping to get a favorable disposition. You can go into all that.

[4] The trial court ruled:
You can't impeach her about what she is charged with. You can ask her about bias, and the bias will be whether she has been promised anything in return for her testimony. But you cannot impeach her or try to impeach her based on what the type of charge is because she hasn't been convicted of it. . . . I am going to let you go as far as I told you, but you cannot get into the [nature of the crime] because she is not convicted of any of that.

cross-examination of Agan. The right of cross-examination integral to the Sixth Amendment right of confrontation is not an absolute right that mandates unlimited questioning by the defense. *Hines,* supra (trial court "may exercise reasonable judgment in determining when the subject is exhausted"); *Watkins v. State,* 264 Ga. 657, 660 (1) (449 SE2d 834) (1994) (no error where "the trial court did not preclude all inquiry on a subject with respect to which appellant was entitled to a reasonable cross examination. [Cits.]"). "The Confrontation Clause guarantees 'only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' [Cit.]" *United States v. Oliver,* 278 F3d 1035, 1041 (II) (B) (10th Cir. 2001). Accordingly, trial courts " 'retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.' " (Footnote omitted.) *Brown,* supra, 276 Ga. at 194. In assessing whether the limits imposed by the trial court were reasonable, "our task is to determine ' "whether the jury had sufficient information to make a discriminating appraisal of the witness' motives and bias." ' [Cit.]" *United States v. Oliver,* supra.

In *Brown,* supra, we found no abuse of the trial court's discretion when it precluded the defendant from asking a State witness "about the specific underlying facts of pending criminal charges." Id., 276 Ga. at 193 (3). In *United States v. Oliver,* supra, the Tenth Circuit found no Confrontation Clause violation when the trial court prevented the defendant from inquiring about the specific nature of charges pending against the State's witness because the limitation did not "significantly impede [the defendant's] ability to challenge the 'believability of (the) witness and the truth of his testimony,' [cit.]" and the defense was afforded "ample opportunity to portray [the witness] as biased and motivated to lie." Id., 278 F3d at 1041. See also *Coolen v. Florida,* 696 So2d 738, 743 (Fla. 1997) (finding no abuse of discretion when trial court limited cross-examination of witness by not allowing questioning about the nature of criminal charges pending against her).

In appellant's trial, the jury learned through defense counsel's cross-examination that Agan had charges currently pending against her,[5] that she had been indicted by a grand jury, and the month and year when she had been indicted. The jury heard counsel's direct question to Agan whether her testimony at trial was related to the

---

[5] When questioning Agan about the pending charges, defense counsel made the point before the jury that he would not ask her about the nature of the charges in order not to "embarrass" her.

pending charges against her. Under these circumstances we find that the trial court's ruling that barred appellant from inquiring into the nature of the pending charges did not impair the defense from providing the jury with "sufficient information to make a discriminating appraisal" of Agan's motives and biases.[6] See *United States v. Oliver*, supra. Accordingly, we find no abuse of the trial court's discretion in excluding this evidence. See *Brown*, supra.

4. In assessing appellant's contention that the State violated *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963) by withholding the testimony of James Hudgins, the trial court correctly analyzed the evidence to determine if appellant carried his burden of showing that (1) the State possessed information favorable to appellant; (2) appellant did not possess the evidence nor could he obtain it with due diligence; (3) the prosecution suppressed the evidence; and (4) a reasonable probability exists that the outcome of the trial would have been different had the evidence been disclosed. See *Burgeson v. State*, 267 Ga. 102 (2) (475 SE2d 580) (1996). We find no error in the trial court's determination that appellant failed to establish the fourth element, in that a review of Hudgins' testimony at the motion for new trial supports the trial court's assessment that Hudgins' version of events was "devoid of credibility" when compared to the uncontested and objective evidence established at trial.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 19, 2003.

*Cook & Connelly, Bobby Lee Cook, L. Branch S. Connelly*, for appellant.

*Bryant G. Speed II, District Attorney, Fred R. Simpson, Leigh E. Patterson, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Madonna M. Heinemeyer, Assistant Attorney General*, for appellee.

---

[6] While the trial court's ruling prevented the jury from knowing the specific nature of the charges pending against Agan, this restriction did not necessarily harm the defense as the jury was thus left free to speculate that Agan was charged with far more serious or heinous crimes than she actually was.