**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 13 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

HOMER PRICE,

    Defendant - Appellant.

No. 03-5053

(N.D. Oklahoma)

(D.C. No. 02-CR-19-P)

---

**ORDER AND JUDGMENT** *

---

Before **TACHA,** Chief Circuit Judge, **ANDERSON** and **BALDOCK** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Homer Price was convicted of possessing a firearm after a prior felony conviction, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), and was sentenced to 188 months' imprisonment followed by five years' supervised release. Mr. Price appeals his conviction, claiming that his Sixth Amendment right to confront witnesses was violated when the district court refused to allow his attorney to use his prior acquittal in state court to impeach government witnesses' testimony during cross-examination.

## BACKGROUND

The charge against Price resulted from a domestic dispute between him and his wife, Lynn Price, on December 1, 2001, at their residence in Tulsa, Oklahoma. At Price's trial in federal district court, Lynn Price testified that her husband had returned to the house that day intoxicated and began arguing with her. When he ran out of cigarettes, she drove him to the store to buy more. When they returned home, he continued to argue with and threaten her and, after entering the house, slapped her face. According to Lynn Price, she then heard a gun go off and saw her husband holding a .38 revolver that he had previously bought for her. She called the police and reported that her husband had shot at her. She testified that Price then went to the bedroom and returned without the revolver. She then went to the bedroom, retrieved the revolver, and left the house in her car. She met

police officers, including Officer Ashley Williams, a few blocks away and told them what had happened, and they took the revolver from her car.

Meanwhile, Officer Michael Brown responded to the call that Lynn Price had made before leaving the house. Officer Brown testified that he parked his car half a house away from the Price residence and approached the residence on foot. As he approached, he saw lights in the house go off and then, according to his testimony, saw a man in the doorway holding a shotgun diagonally across his chest. Officer Brown then returned to his police car and called for backup. When other officers arrived, Officer Brown left his car again and moved behind a tree across the street from the house. He testified that during this time he saw the man come to the door several more times but on those occasions the man was not carrying a shotgun. On one occasion, he saw the man walking with a cane.

After some time, the man – who turned out to be Homer Price – emerged from the house and was arrested by the waiting officers. The officers conducted a protective sweep of the house, during which they did not observe any firearms. Officer Williams then arrived at the house with Lynn Price, who gave consent to search the house. During the search, a spent .38 caliber casing was found in the bedroom, and a shotgun, loaded with two rounds, was found in the bedroom closet.

Price was taken to the police station by Officer Williams. Officer Williams read Price his *Miranda* rights, and he signed a waiver form. Officer Williams testified that Price appeared very intoxicated but not so intoxicated that he was incapable of understanding his rights or signing the waiver. After signing the form, Price admitted to Officer Williams that he owned the shotgun.

On February 8, 2002, Price was charged by federal grand jury indictment with possessing firearms and ammunition having been previously convicted of a felony, in violation of §§ 922(g)(1) and 924(e). On February 21, 2002, Price was charged in state court of assault with a dangerous weapon, domestic assault and battery, and carrying a firearm while under the influence of alcohol, in violation of Oklahoma law. On May 15, 2002, the jury in his state court trial acquitted him of all the state law charges.

The federal trial was held November 18-19, 2002. Before trial, the government submitted a motion in limine requesting that the court not allow Price to refer explicitly to his acquittal in state court or to the nature of the state court proceedings. Price's attorney opposed the motion on the grounds that she anticipated that the government's witnesses might change their testimony in the federal trial, and she intended to use the state court acquittal to show the witnesses' bias and motivation for doing so, under the theory that "the previous testimony was not sufficient to obtain a conviction in state court, so the stories

have changed to increase the chances of conviction." R. Vol. I, tab 44 at 1. The district court postponed ruling on the motion until the issue arose at trial. At trial, the court first directed Price's attorney to use the term "previous proceeding" when referring to the state court trial. When Price's attorney subsequently sought to refer to the acquittal, the court directed her not to do so, stating that "[m]y ruling is based on what I have heard and I don't believe [the acquittal] is relevant to this case." Trial Tr. at 242, R. Vol. V. Price's attorney then moved for a mistrial, and the court denied the motion.

On November 20, 2002, the jury in his federal trial found Price guilty of the federal charge with respect to the shotgun but not with respect to the shotgun ammunition, the .38 revolver, or the .38 revolver ammunition. Price brought this appeal.

## DISCUSSION

Price's only argument on appeal is that the district court's refusal to allow reference to his state trial acquittal during cross-examination of government witnesses violated his rights under the Sixth Amendment's Confrontation Clause. Whether a trial court's restrictions on cross-examination violated a defendant's Sixth Amendment confrontation rights is an issue of law we review de novo. United States v. Toles, 297 F.3d 959, 967 (10th Cir. 2002).

"The right to cross-examine witnesses is an integral part of the broader Sixth Amendment right to confront witnesses directly in a criminal trial." United States v. Oliver, 278 F.3d 1035, 1041 (10th Cir. 2001). In particular, "'the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.'" Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986) (quoting Davis v. Alaska, 415 U.S. 308, 316-17 (1974)). Nevertheless, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Id. at 679; see United States v. DeSoto, 950 F.2d 626, 629 (10th Cir. 1991). "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Van Arsdall, 475 U.S. at 679 (further quotation omitted). "On review, our task is to determine 'whether the jury had sufficient information to make a discriminating appraisal of the witness' motives and bias.'" Oliver, 278 F.3d at 1041 (quoting United States v. Gault, 141 F.3d 1399, 1403 (10th Cir. 1998)) (further quotation omitted).

In this case, we do not believe the district court's refusal to allow reference to Price's state trial acquittal amounted to a Confrontation Clause violation.

Although Price's attorney was not allowed to refer to the acquittal, she was able to use the prior inconsistent statements that the government witnesses had made during the state trial to call into question these witnesses' reliability. The record indicates, for example, that in cross-examining Officer Williams, Price's attorney quoted the officer's state court testimony that Price had been "extremely" intoxicated whereas, as indicated above, in federal court Officer Williams testified that Price was not so intoxicated he could not understand or waive his *Miranda* rights. Trial Tr. at 154, 175, R. Vol. V. In questioning another officer, called as a defense witness in regard to the same issue, Price's attorney quoted the officer's state trial testimony that Price was in such a state of intoxication that he "was unable to walk without assistance," whereas in federal court she claimed that Price would have been able to walk without assistance. Id. at 314, 319. In cross-examining Officer Brown, Price's attorney quoted the officer's state trial testimony that he had parked one and a half houses away from the Price residence, whereas in federal court he claimed to have parked a half house away. Id. at 186, 208.

Price argues that these inconsistent statements, by themselves, were only useful for impeaching the witnesses' credibility, not for showing bias. In order to show bias, he maintains, it would have been necessary to reveal that the inconsistencies may have been motivated by the state trial acquittal, which, under

this theory, stimulated the witnesses' desire to obtain a conviction in the federal trial.

We disagree. The idea that police officers testifying for the prosecution might hope their testimony will help in obtaining a conviction is, we believe, not so unfamiliar that a jury would need to know of a prior acquittal in order to draw an inference of bias, if warranted, from inconsistent past testimony. The trial transcript indicates that Price's attorney implied the possibility of bias during her closing argument, stating "I guess if you are allowed to tell it enough times, maybe eventually you will get it the way you want it. I don't know." Trial Tr. at 362, R. Vol. VI. Through most of the trial, however, Price's attorney chose to downplay this suggestion, stating, for example, that "[i]t's very easy 11 months later to characterize something that you heard or that you were involved in, not meaning to lie, not meaning to misrepresent. I'm not trying to tell you that these police officers are dishonest, but I am trying to tell you that they could be very gravely mistaken." Id. at 363. While Price's attorney chose to emphasize the possibility of mistake and de-emphasize the possibility of bias on the part of the testifying police officers, we regard this as a strategic decision on her part and not a result of an ability to imply bias more strongly.

This is not a case, then, where "the trial court prohibited *all* inquiry into the possibility that [a witness] would be biased." Van Arsdall, 475 U.S. at 679. In

light of the fact that the charges at issue in the state trial, though arising out of the same incident, were entirely different from the charge at issue in the federal trial, we conclude that allowing reference to the state trial acquittal in the federal trial would have added little relevant information while posing a substantial risk of confusing the issue or misleading the jury.     See United States v. De La Rosa , 171 F.3d 215, 219-20 (5th Cir. 1999) ("[E]vidence of a prior acquittal will often be excludable . . . because its probative value likely will be 'substantially outweighed by the danger of prejudice, confusion of the issues, or misleading the jury.'" (quoting Fed. R. Evid. 403)).  We therefore uphold the district court's ruling on this issue.

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge