**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 16 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ANTHONY GAULT,

    Defendant-Appellant.

No. 97-2235

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CR-95-229-JP)

J. Miles Hanisee, Assistant United States Attorney (John J. Kelly, United States Attorney; Charles L. Barth, Assistant United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

Joseph W. Gandert, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

Before **BALDOCK**, **BARRETT**, and **LOGAN**, Circuit Judges.

**BALDOCK**, Circuit Judge.

On March 18, 1997, a jury convicted Defendant Anthony Gault of possession of a

controlled substance with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and

841(b)(1)(A), and aiding and abetting, in violation of 18 U.S.C. § 2.  Defendant was sentenced to 210 months imprisonment and five years of supervised release.  Defendant raises three issues on appeal.  First, Defendant argues that the use of voter registration lists as the source of jury venires in the United States District Court for the District of New Mexico violates the Fifth Amendment equal protection clause and the Sixth Amendment right to a representative jury.   Second, Defendant argues that the district court erroneously limited the cross-examination of a government witness.  Third, Defendant argues that the district court erred in refusing to grant his request for a base offense level reduction pursuant to § 3B1.2 of the United States Sentencing Guidelines (hereinafter "U.S.S.G.").  Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.   For the reasons set forth below, we affirm.

I.

The background of this case is set forth in United States v. Gault, 92 F.3d 990 (10th Cir. 1996), and need not be repeated here. We include only those facts relevant to the issues presented in this appeal.  On April 3, 1996, a DEA agent boarded an Amtrak train in Albuquerque, New Mexico.  The agent noticed a nylon carry-on bag on the floor in front of aisle seat number 29.   After kicking the bag and lifting it to determine its weight, the agent sniffed it and detected the odor of ether, which is used in the manufacture of phencyclidine ("PCP").  When Defendant reboarded the train and sat down in seat number 29, the agent approached him and asked for consent to search the bag.  When

Defendant refused to consent to a search, the agent detained the bag. The agent then obtained a search warrant and discovered that the bag contained six whiskey bottles filled with PCP.[1] Defendant was subsequently arrested when the train stopped in Las Vegas, New Mexico.

## II.

Defendant challenges the jury selection system in the federal district courts in New Mexico, arguing that the use of voter registration lists to select jury panels has systematically excluded Hispanics, Native Americans, and African Americans from jury service, in violation of the Fifth and Sixth Amendments. We disagree.

On December 9, 1996, after a jury had been chosen, but before the jury was sworn, Defendant moved to dismiss the jury panel. Defendant sought to challenge the constitutionality of the jury selection process in the Albuquerque/Santa Fe Division of the United States District Court for the District of New Mexico ("the District").[2] The district court dismissed the jury and ordered briefing on the issue. In lieu of an evidentiary hearing, the parties requested permission to submit transcripts of testimony from a November 26-27, 1996, hearing held before the Honorable Martha Vazquez, during which evidence was presented in the case of United States v. Cesar Gonzales, No. 95-0538 (D.N.M.), regarding the constitutionality of the District's jury selection plan. After

---

[1] In Gault I, we reversed the district court's order suppressing the PCP.

[2] The District of New Mexico is subdivided into three divisions for purposes of jury selection: Albuquerque/Santa Fe, Roswell, and Las Cruces.

considering the material presented by the parties, the district court, in a thorough and well-reasoned opinion, United States v. Gault, 973 F.Supp. 1309 (D. N.M. 1997), concluded that the District's jury selection process was constitutional. We review the district court's findings for clear error. United States v. Contreras, 108 F.3d 1255, 1268 (10th Cir. 1997).

In 1968, the District, in compliance with the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861, adopted a "Plan for Random Selection of Jurors." The plan provides for the selection of prospective jurors through voter registration lists. Under the plan, the Clerk of the Court determines the number of jurors needed for a particular division of the District. Jurors are then randomly selected from the voter registration lists from the counties in the division. Those names are placed on a "Master Juror Wheel." Each of the individuals on the "Master Juror Wheel" receives a juror qualification questionnaire. As part of the questionnaire, potential jurors are asked to identify their race and/or ethnicity. The registered voters who return the questionnaires and are not disqualified, excused or exempted, are placed on the "Qualified Juror Wheel."[3] The jury venires are then selected randomly from the "Qualified Juror Wheel." Defendant argues that this method of jury selection systematically underrepresents Hispanics, Native

---

[3] In order to qualify for jury service, individuals must be citizens aged 18 or older, who have resided in New Mexico for a full year, who can speak, read, write and understand the English language, and who do not have a felony record. Exemptions from jury service are granted to full-time elected officials, military personnel, and full-time members of fire and police departments.

Americans, and African Americans, and is therefore unconstitutional.

The Sixth Amendment guarantees a defendant the right to a jury pool comprised of a fair cross-section of the community. United States v. Ruiz-Castro, 92 F.3d 1519, 1527 (10th Cir. 1996). A defendant does not, however, have a right to a jury of "any particular composition" and the jury actually chosen does not have to "mirror the community." Taylor v. Louisiana, 419 U.S. 522, 538 (1975). Historically, federal courts have upheld the use of voter registration lists to select jury venires. Ruiz-Castro, 92 F.3d at 1527.

In order to establish a prima facie violation of the Sixth Amendment, Defendant must show: (1) that the group alleged to be excluded is a distinctive group in the community; (2) that the representation of this group in jury venires is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process. Yazzie, 660 F.2d at 425. In order to establish a Fifth Amendment equal protection violation, Defendant must show that the use of voter registration lists resulted in the "substantial underrepresentation" over a significant period of time of a "recognizable, distinct class." Castaneda v. Partida, 430 U.S. 482, 494 (1977). A selection process which is "susceptible of abuse or is not racially neutral" supports a presumption of discrimination. Id.

Although Fifth Amendment equal protection and Sixth Amendment fair-cross section cases are not identical, both require similar showings. See United States v.

Yazzie, 660 F.2d 422, 426 (10th Cir. 1981). Therefore, we address Defendant's Fifth and Sixth Amendment claims concurrently. Because the Government concedes that Hispanics, Native Americans and African Americans are distinct groups within the community, our analysis begins with a determination of whether these groups have been substantially underrepresented in jury venires in the District. In conducting this analysis, courts generally rely on two methods of comparison: absolute disparity and comparative disparity. See Yazzie, 660 F.2d at 426. Census data and the responses to the juror qualification questionnaires are used to compute these statistics. Absolute disparity is determined by subtracting the percentage of a group in the jury wheel from the percentage of that same group in the general population. Id. Comparative disparity is determined by dividing the absolute disparity of a group by the percentage of that group in the general population. Id.

When analyzing jury composition challenges, the court must look to the relevant Qualified Juror Wheels. Id. at 427. In this case, the grand jury which indicted Defendant was selected from the 1993 wheel and the petit jury was selected from the 1995 wheel. Thus, the district court relied on absolute and comparative disparity figures for 1993 and 1995. The district court found absolute disparities for Hispanics of 7.00% and 5.74% and comparative disparities of 19.94% and 16.35% for 1993 and 1995, respectively. The absolute disparities for Native Americans were 3.26% and 3.19%, with corresponding comparative disparities of 32.44% and 31.74%. The statistics for African Americans

were .28%, .66%, 15.14% and 35.68%.  Thus, absolute disparities ranged between .28%

and 7.00% and comparative disparities between 15.14% and 35.68%.  These percentages

are much lower than those upon which courts have relied to find constitutional violations.

See Castaneda, 430 U.S. at 495 (40% absolute disparity established prima facie case of

equal protection violation); Duren v. Mississippi, 439 U.S. 357, 365-66 (1979) (39%

absolute disparity established that women were not fairly represented in jury pool in Sixth

Amendment fair-cross section case).

   In this circuit, we have held that an absolute disparity of 4.29% and a comparative

disparity of 46.3% did not violate the Fifth or Sixth Amendments.   Yazzie, 660 F.2d at

427.  In Yazzie, we addressed the same claims presented in this case and concluded that

the use of voter registration lists did not result in the substantial underrepresentation of

Native Americans on New Mexico jury panels.   As the district court noted, the statistics

for Native Americans in New Mexico have improved since Yazzie.   Since 1977, the

absolute disparity for Native Americans decreased by more than 1% and the comparative

disparity decreased by almost 15%.  If the Yazzie figures failed to rise to the level of a

constitutional violation, it follows that neither do the smaller discrepancies cited in this

case.

   In light of Yazzie and the record before us, we are unable to find that the

disparities here are so "gross" or "marked" as to establish a substantial

underrepresentation under equal protection, or that the representation of these groups on

the jury panels is not fair and reasonable under the Sixth Amendment.  See United States

v. Test, 550 F.2d 577, 590 (10th Cir. 1976) (only "gross" or "marked" disparities or

"substantial" departures from a "fair cross section" of the community require judicial

intervention).  Accordingly, we affirm the decision of the district court.

III.

Next, Defendant argues that his Sixth Amendment confrontation rights were

violated because the district court denied him the opportunity to effectively cross-examine

DEA forensic chemist Buddy Goldston.  Goldston performed the laboratory tests

identifying the substance found in Defendant's carry-on bag as PCP.   Defendant sought

to question Goldston about a former DEA colleague's submission of falsified reports.

The DEA agent, Ann Castillo, had admitted to failing to perform the controlled substance

tests upon which her reports were based.   The district court refused, under Fed.R.Evid.

403, to allow the cross-examination, on the grounds that the probative value was

outweighed by the risk of unfair prejudice and confusion of the issues.

We review de novo whether a defendant's Sixth Amendment confrontation rights

were violated by cross-examination restrictions, and whether any such violation was

harmless. United States v. Pedraza, 27 F.3d 1515, 1529 (10th Cir. 1994).   Although

Defendant's right to cross-examine witnesses is an integral part of the right to

confrontation, it is not an absolute or unlimited right.  Miranda v. Cooper, 967 F.2d 392,

401 (10th Cir. 1992).   The trial court retains broad discretion to limit cross-examination

8

to prevent, among other things, undue prejudice and confusion of the issues.  Id. at 402. In reviewing the cross-examination, we must determine "'whether the jury had sufficient information to make a discriminating appraisal of the witness' motives and bias.'"  United States v. Sinclair, 109 F.3d 1527, 1537 (10th Cir. 1997) (quoting United States v. De Gudino, 722 F.2d 1351, 1354 (7th Cir. 1983).

In light of the limited relevance of Castillo's conduct, we hold that the district court's restriction of Goldston's cross-examination did not violate Defendant's Sixth Amendment rights.  The record is clear that Castillo was not involved in the laboratory tests performed in this case.  There was also no suggestion of widespread misconduct or improper procedures at the Dallas DEA laboratory.  As the district court noted, Defendant had no reason to believe that Goldston may have acted improperly or had falsified test results.  Defendant reviewed Goldston's worksheets and graphs of the tests performed and found no evidence of irregularities.  Nothing in Goldston's work records suggested that he may have failed to perform the underlying tests.   Based on the foregoing, we agree with the district court that there was an insufficient basis from which to conclude that the failure of one DEA chemist in Dallas, Texas, to conduct laboratory tests suggests that the work of another chemist in the same lab was also unreliable.

Moreover, the jury had sufficient information to assess the reliability of Goldston's testimony.  Defendant cross-examined Goldston regarding the supervision he received in the laboratory, the types of tests performed in this case, and the accuracy of the test

9

results.  Accordingly, Defendant's confrontation rights were not violated by the district court's refusal to allow cross-examination regarding Castillo's conduct.

IV.

We now turn to Defendant's final issue on appeal.  Defendant argues that the district court erred by declining to grant him a downward adjustment under U.S.S.G. § 3B1.2 as a minimal or minor participant.   We review the district court's findings for clear error,  United States v. Ayers, 84 F.3d 382, 383 (10th Cir. 1996), and will not reverse the district court unless the court's findings are without factual support in the record, or if after reviewing the evidence we are left with the definite and firm conviction that a mistake has been made.  United States v. Telman, 28 F.3d 94, 97 (10th Cir. 1994).

Section 3B1.2 permits the district court to decrease the base offense level if the defendant's role in the offense makes him "substantially less culpable than the average participant." U.S.S.G. § 3B1.2, comment. (backg'd).   The four-level decrease for minimal participation under § 3B1.2(a) "will be used infrequently" and should be reserved for "defendants who are plainly among the least culpable of those involved in the conduct of a group."  U.S.S.G. § 3B1.2, comment. (nn. 1-2).  The two-level decrease for minor participation applies to individuals who are "less culpable than most other participants, but whose role could not be described as minimal."  U.S.S.G. § 3B1.2, comment.  (n. 3).

The jury convicted Defendant of possessing, with intent to distribute, more than a

kilogram of PCP. A special agent of the Drug Enforcement Agency discovered the PCP in Defendant's carry-on luggage after boarding the train during a stop at the Amtrak station in Albuquerque, New Mexico. After his conviction, Defendant sought a § 3B1.2 downward adjustment for his role in the offense, arguing that he was merely a drug "mule" or "courier".

On appeal, Defendant argues that the district court based its refusal to grant the downward departure on an incorrect statement in the presentence report. The presentence report stated that "the defendant was the only person involved in the Amtrak train arrest . . . [and] the United States Probation Office has not received any additional information stating that there was any additional defendants or a scheme or organization which the defendant associated with." Defendant argues this finding is erroneous because the circumstances suggest that other participants necessarily were involved in the offense. Specifically, Defendant asserts that in order to transport and distribute such a large amount of PCP, Defendant must have been part of a "complex, extensive drug scheme" involving "many individuals." During the sentencing hearing, the district court concluded that the evidence did not support a finding that Defendant was only a minimal or minor player in the offense. The district court was "'not bound to accept the defendant's own declarations about his level of participation in the crime.'" United States v. Caruth, 930 F.2d 811, 814-15 (10th Cir. 1991) (quoting United States v. Badger, 925 F.2d 101, 105 (5th Cir. 1991)). Instead, in order to weigh the relative culpability of

participants, "'evidence must exist of other participants and their role in the criminal activity.'" United States v. Sukiz-Grado, 22 F.3d 1006, 1009 (10th Cir. 1994) (quoting United States v. Arredondo-Santos, 911 F.2d 424, 426 (10th Cir. 1990). The Defendant had the burden at sentencing of establishing by a preponderance of the evidence that he was entitled to a § 3B1.2 reduction. Ayers, 84 F.3d at 383. The district court concluded that Defendant failed to do so. On the basis of this record, we conclude that the district court's finding was not clearly erroneous.[4]

The judgment of the district court is

AFFIRMED.

---

[4]We note that even if Defendant had established that other individuals were involved, an adjustment is not required merely because there were multiple participants. Caruth, 930 F.2d at 815. Furthermore, drug couriers are not automatically entitled to a minor participant downward adjustment. Sukiz-Grado, 22 F.3d at 1009.