**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 8, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JASON E. FRAZIER,

Defendant - Appellant.

No. 10-3262

(D. Kansas)

(D.C. No. 2:09-CR-20152-KHV-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **O'BRIEN**, and **MATHESON**, Circuit Judges.

---

Defendant Jason E. Frazier was convicted in the United States District Court for the District of Kansas on charges of kidnapping, *see* 18 U.S.C. § 1201(a)(1); using and carrying a firearm during and in relation to a drug-trafficking crime, *see id.* § 924(c); being a convicted felon in possession of a firearm, *see id.* §§ 922(g)(1), 924(a)(2), and 924(e); and possessing with intent to distribute five grams or more of cocaine base, *see* 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii). He raises four contentions on appeal: (1) that the district court

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

improperly admitted evidence seized in a warrantless search of his car; (2) that the district court improperly denied his challenge to the jury array; (3) that the government engaged in prosecutorial misconduct by permitting perjury; and (4) that the district court allowed a less-than-unanimous verdict.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm. The search of Defendant's car was supported by probable cause. His challenge to the jury array fails because he made no showing of systematic exclusion of African-Americans from the jury pool or their chronic underrepresentation in the pool. Defendant has not established prosecutorial knowledge of perjury, much less perjury itself. And there is no reason to believe that the verdict was not unanimous.

## I. BACKGROUND

On October 29, 2009, Samuel Schwer and his daughter Katrina entered a gas station in Kansas City, Missouri, to ask for directions to their hotel in the same city. They had driven separate vehicles from Wisconsin to come to Kansas City for a livestock show; Mr. Schwer drove a 2004 Dodge Ram truck and Ms. Schwer drove a 2003 Ford Taurus. When the gas-station attendant was unable to help, Mr. Schwer approached Defendant, a customer at the station. Defendant gave them directions, but Mr. Schwer was still confused, so they agreed that Defendant would guide the Schwers to their hotel for a five-dollar fee.

The Schwers followed Defendant in their vehicles for a while, but eventually the Schwers noted that they were crossing the river into Kansas and

thought that they had traveled too far. Speaking to each other on their cell phones, they agreed to get off the highway at the next exit. Defendant, noting Mr. Schwer's turn signal, exited in front of them. Upon exiting, Mr. Schwer pulled alongside his daughter and told her to follow him. He then drove on, expecting her to follow. Instead, he heard a scream and looked back to see Defendant leaning into Ms. Schwer's car. He immediately backed up his car to squeeze Defendant between the Schwers' two vehicles, freeing Ms. Schwer and allowing the Schwers to drive off. During this encounter Mr. Schwer did not see a weapon, but Ms. Schwer saw a little pistol.

Believing that they had escaped Defendant, Ms. Schwer drove into a convenience-store parking lot in Kansas, followed by her father. But Defendant arrived in the parking lot soon thereafter and the Schwers took off again. In the lot Mr. Schwer saw a gun in Defendant's hands. Defendant caught up to Ms. Schwer and, while driving next to her at high speed, pointed his gun at her and yelled at her to get in his car. Eventually Defendant got in front of her, but Mr. Schwer caught up to them and pulled in front of Defendant's car, enabling Ms. Schwer to speed away. He then stopped and drove backwards onto the hood of Defendant's car, before driving off and flagging down two passing police cars. He directed them to where he had last seen Defendant. The Schwers, who were no longer traveling together, independently called 911 to report the incident.

Officers located Defendant's car, stopped it, and placed him in handcuffs. One officer saw a spent shell casing on the passenger seat. When Mr. Schwer arrived, he identified Defendant as the assailant. Defendant was then arrested for aggravated assault. A search of his person revealed no weapon, but in the car trunk officers discovered a bag containing controlled substances, ammunition, and a Ruger P89 9mm handgun.

After being indicted, Defendant filed an unsuccessful motion to suppress the evidence found in his car and unsuccessfully complained of the absence of African-Americans from the jury array. On July 2, 2010, a jury convicted Defendant on all charges. We will set forth additional facts in our discussion of the issues on appeal.

## II.  DISCUSSION

### A.  Motion to Suppress

"When reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government, accept the district court's findings of fact unless clearly erroneous, and review *de novo* the ultimate determination of reasonableness under the Fourth Amendment." *United States v. Warren*, 566 F.3d 1211, 1214 (10th Cir. 2009) (internal quotation marks omitted).

The district court upheld the search of Defendant's vehicle both because there was probable cause for the search and because the search was a proper inventory search. Defendant challenges both justifications for the search.

Because we agree that the search was supported by probable cause, we need not consider whether it was also a proper inventory search.

Law-enforcement officers may conduct a warrantless search of an automobile if they have probable cause to believe that it contains evidence of a crime or contraband. *See United States v. Burgess,* 576 F.3d 1078, 1087 (10th Cir. 2009). The search may extend to "every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982). Contrary to Defendant's apparent belief, the limits on searches incident to arrest set forth in *Arizona v. Gant*, 129 S. Ct. 1710 (2009), do not apply to vehicle searches based on probable cause, *see id*. at 1721.

We have little doubt that there was probable cause to believe that Defendant's automobile contained evidence of a crime. Defendant does not suggest any reason why the police officers should have doubted the veracity of the Schwers. *See Easton v. City of Boulder,* 776 F.2d 1441, 1449 (10th Cir. 1985) ("[T]he skepticism and careful scrutiny usually found in cases involving informants . . . from the criminal milieu[] is appropriately relaxed if the informant is an identified victim or ordinary citizen witness."). The Schwers had informed officers of the assault by Defendant and his possession of a gun, and Mr. Schwer identified Defendant when he was in police custody. Moreover, an officer had seen in plain view a spent shell casing on the passenger seat of Defendant's car.

This information provided probable cause to believe that there was a gun in the vehicle.

### B.    Challenge to the Jury Array

In district court Defendant challenged the jury array because it lacked any African-Americans.  Two constitutional amendments are implicated.  The Sixth Amendment guarantee of an impartial jury is violated "if the [jury selection] system does not draw its jury members from a fair cross section of the community."  *United States v. Shinault*, 147 F.3d 1266, 1270 (10th Cir. 1998).  To establish a Sixth Amendment violation, Defendant must show:

> (1) that the group alleged to be excluded is a distinctive group in the community; (2) that the representation of this group in jury venires is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*United States v. Gault,* 141 F.3d 1399, 1402 (10th Cir. 1998).  The method of jury selection may also violate the Fifth Amendment right to equal protection if it "resulted in the substantial underrepresentation over a significant period of time of a recognizable, distinct class."  *Id.* (internal quotation marks omitted).

Defendant bears the burden of producing evidence to support these constitutional challenges.  *See Gault,* 141 F.3d at 1402.  But he has presented no evidence of any systematic exclusion or chronic underrepresentation of African-Americans.  Indeed, he concedes in his brief on appeal that "there is no evidence in the record regarding the representation of [African-Americans] in jury venires

-6-

and whether this underrepresentation is due to the systematic exclusion of the group in the jury-selection process." Aplt. Br. at 30. Although he tries to excuse his failure to make a showing on that ground that "[m]any of these facts are exclusively within the control of the clerk of courts, or contained on voter registration logs," *id.*, he has failed to show that he could not have obtained the relevant information through judicial process. *Cf.* D. Kan. R. 38.1 (describing jury-selection process).

## C. Alleged Prosecutorial Misconduct

Defendant contends that his trial was tainted by prosecutorial misconduct because the prosecutor either purposely presented perjured testimony or "at the very least . . . allowed that evidence to go uncorrected where it appeared." Aplt. Br. at 35 (emphasis omitted); *see Napue v. Illinois*, 360 U.S. 264 (1959) (reversing conviction for prosecution's failure to correct false testimony). In support he points to various discrepancies in witness testimony. At trial, however, defense counsel's only allegation of prosecutorial misconduct related to suppression-hearing testimony. And even on appeal he fails to show why we must find (on a cold record) that the prosecutor knew that any of the witnesses intentionally gave false testimony. Discrepancies in testimony are common, and can generally be explained as resulting from human failings short of intentional lying. To reverse Defendant's conviction on this ground would bring many, perhaps most, convictions into question. We will reserve such reversals for cases

in which perjury and knowledge of perjury are either clear on the record or have been found by the lower court. This is not such a case.

### D. Verdict Unanimity

Defendant argues that the district court allowed a less than unanimous verdict on Count 3[*] of the indictment, which charged possession of a firearm in furtherance of a federal crime of violence (kidnapping) or drug-trafficking crime (possessing cocaine with intent to distribute). He relies on a jury answer to a question on the verdict form. The verdict form for Count 3 read as follows:

> 4. We, the jury in the above-entitled cause, impaneled and sworn, upon our oaths find defendant, Jason E. Frazier:
>
> _____ Not Guilty) of the crime charged in Count 3
> ) under Instruction No. 15
> _____ Guilty )
>
> If your answer is "guilty," do you find beyond a reasonable doubt that defendant displayed the Ruger pistol to intimidate Katrina Schwer or Samuel Schwer?
> _____ No
>
> _____ Yes

R., Vol. 1 at 96. During its deliberations the jury asked the court whether all 12 jurors had to agree in order to answer "no" to the second part of question 4. The court replied: "If you are not all in agreement to answer 'yes,' you should answer

_____

[*]Although referred to as Count "3" in the instructions and on the verdict form, it was actually Count "2" in the indictment.

'no' to Question 4 on the verdict form." *Id.* at 94. The jury ultimately found Defendant guilty of Count 3, but answered "no" to the second part of question 4.

Defendant asserts that these answers show that "[t]he jury . . . was not unanimous about the essential element of the crime requiring the Ruger pistol." Aplt. Br. at 38. His argument appears to be that the jurors could not all have believed that Defendant had used a weapon during the kidnapping, because not all of them believed that he had used the Ruger pistol, the only gun found during the investigation.

Defendant misunderstands the verdict. The purpose of the second part of question 4 was only to determine whether Defendant was subject to a mandatory minimum sentence of seven years' imprisonment if convicted on Count 3. Under 18 U.S.C. § 924(c)(1)(A)(i), Defendant was subject to a five-year minimum sentence if convicted of using or carrying a firearm during a crime of violence or drug-trafficking crime or possessing a firearm in furtherance of such a crime; but the minimum would be seven years if the firearm was brandished, *see* 18 U.S.C. § 924(c)(1)(A)(ii). Because the jury answered "no" to the second part of question 4, Defendant was not subject to the seven-year minimum. He cannot complain that some of the jurors may have found him eligible for the higher minimum, because he was not subject to it.

As for the Count 3 offense itself, the "no" answer to part two of question 4 hardly shows that the jury could not have unanimously found him guilty on

-9-

Count 3.  The jury was instructed that there were alternative means of committing the offense charged in Count 3.  The instructions stated:

> There are three theories under which defendant can be convicted of this offense:
> 1.  Using the Ruger pistol during and in relation to the kidnapping or attempted kidnapping[;]
> 2.  Possessing the Ruger pistol in furtherance of the kidnapping or attempted kidnapping; or
> 3.  Possessing the Ruger pistol in furtherance of the drug trafficking crime.
> It is not necessary for the government to prove all these theories. It is sufficient if the government proves any of these theories beyond a reasonable doubt. To return a verdict of guilty, however, you must unanimously agree upon which of the three theories applies.

R., Vol. 1 at 84–85.  It is apparent that even if the jury disagreed about whether Defendant had brandished the Ruger during the kidnapping, it could easily have found him guilty of Count 3 under the third alternative, because the Ruger was found in the same bag in the car trunk that contained the cocaine.

## III.  CONCLUSION

We AFFIRM the judgment of the district court.

ENTERED FOR THE COURT

Harris L Hartz
Circuit Judge

-10-