**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

GEORGE DAVID GORDON,

Defendant - Appellant.

No. 16-5000
(D.C. No. 4:14-CV-00675-JHP-FHM and
4:09-CR-00013-JHP-1)
(D. N.D. Okla.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY
AND DISMISSING APPEAL**

Before **HARTZ**, **O'BRIEN**, and **PHILLIPS**, Circuit Judges.

George David Gordon, a federal prisoner proceeding pro se,[1] wants to appeal from the denial of his 28 U.S.C. § 2255 motion. His request for a certificate of appealability (COA) was denied by the district judge, prompting him to reapply in this Court. Because he has not "made a substantial showing of the denial of a constitutional right," *see* 28 U.S.C. § 2253(c)(2), we too deny a COA.

## I. Background

This case has a tortured factual and procedural history. For our purposes,

---

[1] Although Gordon was a licensed attorney, we have nevertheless liberally construed his pro se pleadings. *See Ledbetter v. City of Topeka*, *Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003).

however, it suffices to say that Gordon, a securities lawyer, engaged in a stock manipulation scheme wherein he acquired millions of shares in penny stock companies, artificially inflated the price of those shares through false and misleading advertising, and then sold them for a substantial profit. In July 2007, while the government was investigating Gordon's misdeeds, it seized his law firm bank accounts, filed a caveat (Okla. Stat. Ann. tit. 16, § 74) and then a *lis pendens* on his personal residence, and placed caveats on two lots of land he owned (the Delvest lots).[2] The value of these assets (collectively the restrained assets) exceeded $5 million, substantially less than his claimed net worth of $8.8 million.[3]

In January 2009, a grand jury indicted Gordon with multiple counts of securities related offenses. It also found (1) his residence was directly forfeitable as to one count but a substitute asset as to the other counts and (2) the bank accounts were substitute assets.[4] The Delvest lots were not mentioned in the indictment.

---

[2] A caveat is written notice filed by a person claiming an interest in land. Okla. Stat. Ann. tit. 16, § 74(a); *see also United States v. Gordon*, 710 F.3d 1124, 1133 (10th Cir. 2013) (a caveat is "a warning or proviso") (quotation marks omitted). A "lis pendens" is "[a] notice, recorded in the chain of title to real property, required or permitted in some jurisdictions to warn all persons that certain property is the subject matter of litigation, and that any interests acquired during the pendency of the suit are subject to its outcome." Black's Law Dictionary (10th ed. 2014).

[3] *United States v. Gordon*, 710 F.3d 1124, 1138 (10th Cir. 2013).

[4] Property is forfeitable if it is "involved in" or "traceable to" the offense. *United States v. Gordon*, 710 F.3d 1124, 1135 n.13 (10th Cir. 2013) (quotation marks omitted). "[A] criminal defendant has no Sixth Amendment right to use forfeitable assets to employ counsel." *Id.* (quotation marks omitted). Substitute assets, on the other hand, are not connected to the alleged crime. "'Forfeiture of substitute property cannot occur until after the defendant's conviction and a determination by the trial court that the defendant's act or omission resulted in the court's inability to reach forfeitable property.'" *Id.* at 1136

Based on the grand jury's forfeiture findings and believing the government was improperly preventing him from using the restrained assets to pay his counsel of choice, Gordon sought return of the assets and dismissal of the indictment. He also requested an evidentiary hearing pursuant to *United States v. Jones*, 160 F.3d 641 (10th Cir. 1998). The government opposed his requests arguing the restrained assets were directly forfeitable and therefore Gordon had no right to use them to fund his defense. *See supra* n.4. It also said no hearing was required because Gordon had not shown he had no other assets with which to pay counsel. *Jones*, 160 F.3d at 647. It noted, among other things, that Gordon had paid defense counsel over $900,000 in fees and costs since being indicted. In fact, Gordon had paid this amount to his attorneys since the investigation began in 2006, three years before the indictment. Since the indictment, he had paid his attorneys approximately $96,000.

The district judge denied the motion to dismiss. He concluded the restrained assets were directly forfeitable and Gordon had no constitutional right to use them to employ counsel or otherwise fund his defense. He also decided the government's pretrial seizure and restraint of these assets was proper and no evidentiary hearing was necessary because Gordon had other assets with which to retain counsel. In doing so, he relied in part on the government's misrepresentation concerning the time span over which Gordon had paid $900,000 to his attorneys (the misrepresentation). Gordon moved for reconsideration and later filed an interlocutory appeal. The trial judge denied the motion

n.14 (quotation marks omitted). Therefore, the government cannot restrain substitute assets prior to conviction. *Id.*

to reconsider as untimely. The interlocutory appeal was also untimely and therefore was dismissed.

Gordon was ultimately convicted of the charges against him and sentenced to 144 months imprisonment. The judge ordered the forfeiture of (1) the bank account funds and $1.7 million in Gordon's personal residence as connected to the crimes of conviction and (2) the Delvest lots as substitute assets. We affirmed his convictions and sentences on direct appeal. *See United States v. Gordon*, 710 F.3d 1124 (10th Cir. 2013). Relevant here, we concluded that even if the government had improperly seized and restrained his assets pretrial, no Sixth Amendment violation had occurred because Gordon had not shown he had no other assets to retain private counsel. *Id.* at 1135-38. In doing so, we relied in part on the misrepresentation. *Id.* at 1138. The Supreme Court denied certiorari review. *Gordon v. United States*, 134 S. Ct. 617 (2013). In responding to the petition for certiorari, the government again relied in part on the misrepresentation.

Gordon's § 2255 motion raises various claims of ineffective assistance of counsel, fraud on the court, and prosecutorial misconduct. The judge denied the motion, his subsequent motion for reconsideration, and his COA request.

## II. Discussion

A COA is a jurisdictional prerequisite to our review of a petition for a writ of habeas corpus. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). We will issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, an applicant must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition

- 4 -

should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted). Gordon has not satisfied his burden.

### A. Ineffective Assistance of Counsel

Gordon claims his trial counsel was ineffective in failing to timely file the motion to reconsider and subsequent interlocutory appeal. But even assuming deficient performance, he cannot show prejudice.[5] *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (to establish ineffective assistance of counsel, a defendant must show both (1) deficient performance and (2) prejudice). That is because we eventually denied relief on direct appeal. Had we considered his claim on interlocutory appeal (or the district court had considered his motion to reconsider), the outcome would have been the same. *Id.* at 694 (to satisfy the prejudice prong of an ineffective assistance of counsel claim, a defendant must show the result would have been different absent the errors).

But Gordon adds a new wrinkle. He claims our decision rejecting his Sixth Amendment arguments was flawed because it was based on the government's

---

[5] Gordon alleges prejudice is presumed by the mere fact counsel did not timely file the requested interlocutory appeal, thereby denying him an appeal as of right. He relies on *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), and *Rodriguez v. United States*, 395 U.S. 327 (1969). In those cases, the Supreme Court held that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe*, 528 U.S. at 477. Prejudice is presumed in such circumstances because counsel's performance leads to the denial of an entire judicial proceeding. *Id.* at 483. But we have uncovered no cases extending this reasoning to the denial of an interlocutory appeal where, as here, the defendant has the opportunity to raise and does raise his claims on direct appeal. In other words, counsel's deficient performance (filing an untimely interlocutory appeal) did not deprive Gordon of an appeal altogether, it just delayed the inevitable. No presumption of prejudice applies.

misrepresentation.[6] His premise is wrong, but even if it had merit he cannot meet his required showing of prejudice. The misrepresentation played only a part in our decision. We also relied on (1) his having represented in a 2006 bank application that his net worth was over $8.8 million, (2) his access to the equity in his home, which was substantially more than the amount encumbered by the government ($1.7 million),[7] and (3) his failure to show what his attorneys would have done differently had he had access to the restrained assets. *Gordon*, 710 F.3d 1138-39 & n.17. Indeed, we concluded that "counsel [had] remained fully and actively engaged in the case throughout the entire trial court proceedings" and Gordon "was represented in a thorough and vigorous fashion" by his retained counsel. *Id.* at 1139. While Gordon now alleges his attorney failed to review sizeable discovery, interview several witnesses, and hire the necessary experts and investigators, he has not shown how these failures affected the outcome of his trial, especially in light of the robust defense actually provided and the substantial evidence of his guilt.[8] *See Strickland*, 466 U.S. at 694.

Gordon also alleges his motion to reconsider and interlocutory appeal would have

---

[6] Neither Gordon nor his counsel alerted us to the misrepresentation and we did not discover it on our own.

[7] The government's caveat and *lis pendens* on the residence were limited to $1.7 million. The residence apparently had a value of $4-5 million. Yet, inexplicably, Gordon never sought to use that excess value to fund his defense. On direct appeal, we rejected his claim that the government's encumbrances on his residence made it "unlikely that a lender would provide a mortgage." *Gordon*, 710 F.3d at 1138 n.17. In his COA application and opening brief, he again claims he could not obtain a loan on the residence due to the government's encumbrances. But there is no evidence of any attempt to do so.

[8] Our decision on direct appeal sets forth in excruciating detail his misdeeds. *See Gordon*, 710 F.3d at 1128-33, 1140-52.

raised a successful Fifth Amendment due process claim based on the judge's denial of an evidentiary hearing pursuant to *Jones*. He says we did not address the Fifth Amendment on direct appeal because his appellate counsel failed to adequately brief it. But appellate counsel is not ineffective for failing to raise a non-meritorious claim. *See United States v. Challoner*, 583 F.3d 745, 749-50 (10th Cir. 2009). In *Jones*, we concluded the Fifth Amendment entitled a defendant to a post-restraint, pre-trial evidentiary hearing if he established (1) he "has no assets, other than those restrained, with which to retain private counsel" and (2) "a bona fide reason to believe the grand jury erred in determining that the restrained assets constitute or are derived . . . from gross proceeds traceable . . . to the offense." 160 F.3d at 647. As the district judge found (and we affirmed on direct appeal), Gordon failed to satisfy the first requirement.[9]

Finally, in a Rule 28(j) letter, Gordon cites the Supreme Court's recent decision in *Luis v. United States*, wherein the plurality of the Court held that "the pretrial restraint of legitimate, *untainted assets needed to retain counsel of choice* violates the Sixth Amendment." --- U.S. ---, 136 S. Ct. 1083, 1088 (2016) (emphasis added). He also claims *Luis* decided such violation constitutes "structural error" not subject to harmless error review. Assuming, *arguendo*, *Luis* applies retroactively to cases on collateral

---

[9] Gordon also argues his counsel was ineffective for failing to raise Fed. R. Crim. P. 41(g) (formerly Rule 41(e)) as a basis for his request for an evidentiary hearing. But Rule 41(g) "is an equitable remedy available only to a defendant who can show irreparable harm and an inadequate remedy at law." *United States v. Akers*, 215 F.3d 1089, 1106 (10th Cir. 2000). Gordon had an adequate remedy at law, the civil forfeiture action (which was stayed, without objection from Gordon, pending the outcome of the criminal case). *Id.* ("This court has held that a forfeiture proceeding provides a defendant with an adequate remedy at law for resolving a claim to seized property.").

appeal, it is unavailing here for at least two reasons. First, both Luis and the government

agreed the restrained assets were untainted. 136 S. Ct. at 1088. In this case, the judge, in

denying Gordon's motion to dismiss, found the restrained assets to be directly

forfeitable.[10] Second, Luis needed the funds to obtain counsel of her choice. *Id.* at 1087-

88. Here, Gordon did not need the assets to retain counsel as he, in fact, had retained

counsel of his choice and that counsel "thorough[ly] and vigorous[ly]" represented him at

---

[10] Gordon faults the district judge for finding the assets forfeitable because the grand jury found otherwise, i.e., that the assets were either substitute assets (residence and bank accounts) or not forfeitable (the Delvest lots). He relies on *Jones* and *Kaley v. United States*, --- U.S. ---, 134 S. Ct. 1090, 1094 (2014). But neither case speaks to this issue. *Jones* addressed whether a defendant is entitled to challenge the grand jury's probable cause findings as to the forfeitability of assets, which resulted in the district court issuing a restraining order. 160 F.3d at 643-45. We concluded 21 U.S.C. § 853 does not allow him to do so but the Fifth Amendment requires a hearing if certain conditions are satisfied. 160 F.3d at 644-45, 647-48. As we have explained, he failed to satisfy those conditions. Gordon claims *Kaley* held that a grand jury's probable cause finding that an asset is forfeitable is not judicially reviewable prior to trial. But he is mistaken. *Kaley* decided that when challenging a pretrial restraint of property, a defendant has no constitutional right to contest the grand jury's probable cause finding as to the defendant's guilt. 134 S. Ct. at 1094, 1097-99. Indeed, in that case, the defendants did not dispute the grand jury's finding that there was probable cause to believe the assets were traceable or otherwise sufficiently related to the crime (i.e., forfeitable); they wished only to have the judge re-decide whether there was probable cause that they committed the underlying offense. *Id.* at 1096-97. And, although the government conceded at oral argument that a defendant has a constitutional right to a hearing on whether probable cause exists to believe the assets are forfeitable, the Court expressly said "[w]e do not opine on the matter here." *Id.* at 1095 & n.3.

We recognize that § 853(e)(1)(A), which allows a judge to enter a restraining order "to preserve the availability of [forfeitable] property," contemplates that such order will follow an indictment charging a violation of a requisite crime and "alleging that the [subject] property . . . would, in the event of conviction, be subject to forfeiture." But the judge never entered a restraining order pursuant to § 853(e)(1)(A). Instead, he simply denied Gordon's motion to dismiss the indictment and request for an evidentiary hearing because he had not established a Sixth Amendment violation. On direct appeal, we agreed.

trial.  *Gordon*, 710 F.3d at 1139.  Therefore, unlike the court's order in *Luis*, the government's actions in imposing pretrial restraints on his assets did not prevent him from exercising his Sixth Amendment right to retain counsel of his choice.

### B.  Fraud on the Court

Gordon's fraud on the court claim also fails.  The government admits its statement about the $900,000 in post-indictment defense costs was erroneous, but credibly tells us it came from informal discussions between government counsel and the probation department.  Such cavalier methods are hardly laudable, but Gordon has presented nothing calling its embarrassing explanation into doubt and, tellingly, nothing suggesting it was aware of but disregarded its error.  As far as we can determine from the record, the first mention of the issue occurred in this § 2255 proceeding.  Courts rightfully expect the government to be scrupulously honest in these matters, but a mistake does not, alone, constitute a fraud on the court.  *See Weese v. Schukman*, 98 F.3d 542, 552-53 (10th Cir. 1996) ("Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated will constitute a fraud on the court.  Less egregious misconduct, *such as nondisclosure to the court of facts allegedly pertinent to the matter before it*, will not ordinarily rise to the level of fraud on the court.") (quotation marks omitted).  Moreover, Gordon presented no evidence demonstrating the government's misrepresentation was intentional, as opposed to an innocent mistake.  *Id.* at 553 ("Intent to defraud is an

absolute prerequisite to a finding of fraud on the court . . . .").[11]

### C. Prosecutorial Misconduct

Gordon's prosecutorial misconduct claims face a similar fate. Evaluating a claim of prosecutorial misconduct is a two-step process. *United States v. Fleming*, 667 F.3d 1098, 1103 (10th Cir. 2011). First, we ask "whether the conduct was, in fact, improper." *United States v. Oberle*, 136 F.3d 1414, 1421 (10th Cir. 1998) (quotation marks omitted). If so, we then determine whether reversal is warranted. *Id.*

This claim continues the leitmotif—the government wrongfully restrained his assets and deprived him of his ability to use them to fund his defense. But, as we concluded on direct appeal and have already explained, even assuming the government acted improperly, reversal is not required because Gordon failed to show he was inadequately represented in the trial court by his retained counsel or the unavailability of other assets with which to pay retained counsel.

Gordon also claims the government knowingly presented the perjured testimony of several key factual witnesses at trial or failed to correct the false testimony when it occurred. As the judge properly concluded in denying this claim, "Gordon . . . points to nothing more than apparent inconsistencies in the witnesses' testimonies" which alone do not constitute perjury and fail to show the prosecution knew the testimony was false. (R. at 252.) *See Tapia v. Tansy*, 926 F.2d 1554, 1563 (10th Cir. 1991) ("Contradictions and

---

[11] Given this holding, we also reject Gordon's claim that the judge erred in denying his motion to recuse in the § 2255 proceeding, which was based on Gordon's claim that the judge's testimony was necessary to determine whether the judge knew the government misrepresentation was false and, if so, why he would rely on it.

changes in a witness's testimony alone do not constitute perjury and do not create an inference, let alone prove, that the prosecution knowingly presented perjured testimony."); *see also United States v. Frazier*, 429 F. App'x 730, 734 (10th Cir. 2011) (unpublished) ("Discrepancies in testimony are common, and can generally be explained as resulting from human failings short of intentional lying. To reverse Defendant's conviction on this ground would bring many, perhaps most, convictions into question. We will reserve such reversals for cases in which perjury and knowledge of perjury are either clear on the record or have been found by the lower court.").

We **DENY** a COA and **DISMISS** this matter.

Gordon's request to proceed on appeal *in forma pauperis (ifp)* is **DENIED AS MOOT**. The relevant statute, 28 U.S.C. § 1915(a), does not permit litigants to avoid payment of fees; only prepayment of fees may be excused. Since we have reached the merits of this matter, prepayment of filing and docketing fees is no longer an issue, but liability for those fees remains. Gordon is required to pay all filing and docketing fees ($505.00). Payment must be made to the Clerk of the District Court.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

- 11 -